## BEE BUILDING COMPANY V. WILLIAM DALTON.

FILED MARCH 4, 1903.    No. 12,570.

1. **Dismissal After Submission.** A plaintiff can not dismiss his action without prejudice, after there has been a final submission of it either to the court or jury.

2. **Demurrer to Evidence: ELIMINATION OF JURY.** A jury impaneled to try issues of fact is practically eliminated by a decision sustaining· a demurrer to evidence. Such a decision is essentially a denial of the litigant's claim that he is entitled to a jury trial.

3. ——: DIRECTION, RECEPTION AND RECORDING OF VERDICT CEREMONIAL ACTS. When a court has sustained a demurrer to evidence, the direction, reception and recording of a verdict are mere ceremonial acts. The verdict in such a case has no legal significance; it does not furnish the basis of the judgment nor serve any other useful purpose.

4. **"Submission of a Case to a Jury."** The "submission of a case to a jury," contemplated by section 430, Code of Civil Procedure, is the submission of an issue of fact which the jury is at liberty to decide in favor of either party.

5. **Demurrer to Evidence: SUBMISSION: DISMISSAL.** When a case has been submitted upon a demurrer to the evidence, plaintiff's absolute right to dismiss without prejudice is lost.

6. **Dismissal After Submission in Discretion of Court.** The district court may, in the just exercise of its discretionary power, permit plaintiff to dismiss his case after it has been finally submitted to the court or jury.

7. **Where Dismissal After Submission Is Made as Demandable Right.** But where the discretionary power of the court is not invoked

and the application to dismiss after final submission is made
and allowed as a demandable right, the order of dismissal will
not be upheld unless a denial of the application would amount
to an abuse of discretion.

ERROR to the district court for Douglas county: IRVING
F. BAXTER, DISTRICT JUDGE. *Reversed.*

*Charles J. Greene, Ralph W. Breckenridge* and *James C.
Kinsler,* for plaintiff in error.

*James P. English* and *Timothy J. Mahoney, contra.*

SULLIVAN, C. J.

William Dalton sued the Bee Building Company to re-
cover damages for a personal injury. A jury was im-
paneled to try the issues, and, the plaintiff having sub-
mitted his evidence and rested his case, defendant moved
the court to direct a verdict in its favor on the ground that
there was neither averment nor proof of an actionable
wrong. The motion was sustained, but before the per-
emptory instruction could be given plaintiff asked that the
case be dismissed without prejudice, and his request was
granted. By this proceeding in error the order of dis-
missal is brought to this court for review.

Section 430 of the Code of Civil Procedure is as fol-
lows: "An action may be dismissed without prejudice to
a future action: First—By the plaintiff, before the final
submission of the case to the jury, or to the court, where
the trial is by the court. Second—By the court, where
the plaintiff fails to appear on the trial. Third—By the
court, for want of necessary parties. Fourth—By the
court, on the application of some of the defendants, where
there are others whom the plaintiff fails to prosecute with
diligence. Fifth—By the court, for disobedience by the
plaintiff of an order concerning the proceedings in the
action. In all other cases, upon the trial of the action, the
decision must be upon the merits."

Obviously the principal question to be decided is

whether there was, within the meaning of this section, a final submission of the case upon defendant's motion. The contention of counsel for plaintiff is that the trial was to the jury and that there could be no submission of the case until the jury had complete authority to deal with it. This argument is plausible, but we can not believe that it is sound. It is true a jury was impaneled, but it is equally true that the case was tried by the court, and not by the jury. The case was submitted upon an issue of law, and the determination of that issue eliminated the jury and ended the controversy. After it had been adjudged that the plaintiff had no case, and that there was no issue of fact to be decided, the direction, reception and recording of a verdict would have been mere ceremonial acts. These acts would, we know, be in accordance with conventional procedure; they would satisfy the requirements of judicial formalism, but they would be as useless and idle, and almost as absurd as the archaic practice of withdrawing a juror in order to secure a continuance. To direct the jury to return a verdict in favor of the defendant would have been to command the triers of fact to ratify a decision already made by the court upon a question of law. When the legislature, in section 430, spoke of "the final submission of the case to the jury," it must have had in mind the submission of an issue of fact—the submission of a disputed question, which might be resolved by the jury in favor of either party. In this case there was no issue of fact—the court so decided; and if a verdict had been rendered in obedience to a peremptory instruction, it would have no legal significance; it would not furnish the basis for a judgment in favor of defendant. In every such case the judgment rests, not on the decision of a question of fact, but wholly and exclusively upon the decision of a question of law. When it was determined that the plaintiff had failed to make a case the court might, without taking from the jury a meaningless verdict, have proceeded at once to render judgment in favor of defendant. To be sure, the procedure would not be according to

established usage; but it would be legal and logical and
in harmony with modern methods of transacting business.
It is, as we view it, entirely clear that the "submission of
the case to the jury" contemplated by the statute is the
submission of an issue of fact; and where there is no such
issue there can not, in any proper sense, be said to be a
trial by jury. Indeed, the very essence of a decision sus-
taining a demurrer to evidence is a denial of the litigant's
claim that he is entitled to a jury trial. Before plaintiff
moved to dismiss the action without prejudice, his case
had been, not only submitted to the court upon a vital
issue of law, but that issue had been decided against him
and nothing remained open for contention.

"Where a demurrer to the evidence is sustained," says
Mr. Justice Brewer in *St. Joseph & D. C. R. Co. v. Dryden,*
17 Kan. 278, 280, "the case is ready for judgment. It has
been finally submitted to the court, and the plaintiff has no
more right to dismiss then than he has after a verdict is
returned. The case is decided, and the plaintiff has no
right to avoid that decision by a dismissal." To permit a
party to dismiss under such circumstances is, in substance,
to grant him a new trial after he has been fairly defeated
and to deprive his adversary of the fruits of a fairly won
victory. It is contrary to good sense and sound policy to
allow a party to take his case from one court to another
until fortune favors him with a judge who is willing to
accept his view of the law or his construction of the evi-
dence. "Such a mode of proceeding would," as was said
in *Connor v. Drake,* 1 Ohio St. 166, 170, "be trifling with
the court as well as with the rights of defendants." One
who is defending against a claim which he believes to be
unjust ought not to be subjected to the expense of litiga-
tion which settles nothing. And since he is not permitted to
choose another forum when it is discovered that the court is
against him, it is manifestly unfair to give the plaintiff an
unlimited freedom of choice. The tax-paying public, too,
have rights which it may be presumed the legislature took
into account in adopting section 430. It is, of course,

entirely proper that courts should be maintained at public expense to hear and determine all controversies that may be submitted to them, but it is no part of the business of the state in administering justice to provide for sham trials, or to maintain courts for experimental investigation. Indeed, it would be a reproach to our judicial system to permit a defeated litigant to abandon his case and sue again, thus harassing the defendant and wasting money raised by taxation for public purposes. Our conclusion is that the court erred in sustaining plaintiff's motion and this conclusion is, we think, supported by *State v. Scott*, 22 Neb. 628; *State v. Hazelet*, 41 Neb. 257; *Beaumont v. Herrick*, 24 Ohio St. 445, and other cases. Authorities sustaining the position for which plaintiff contends are numerous enough, but they fail to distinguish between cases in which there is an issue to submit to the jury and those in which there is not. Their reasoning is not convincing and we decline to follow them.

A further contention on behalf of plaintiff is that if the dismissal was not a matter of strict right it was at least a warrantable exercise of a discretionary power vested in the court. The record does not show that the court undertook to exercise a discretionary power or that the situation called for the exercise of such power. The application was evidently made and granted as a demandable right. The plaintiff's only reason for wishing to dismiss was that the court held his evidence to be insufficient. He did not claim then, and he does not claim now, that he failed to produce all the evidence obtainable. There is no suggestion of surprise, mistake or accident; there is no intimation that the case submitted was not as strong as it is ever possible for plaintiff to make it. If the dismissal be regarded as an exercise of judicial discretion, it must have been claimed and allowed on the theory that it was right and proper that plaintiff should have the judgment of another trial court upon his case. Such a theory is, of course, inadmissible. The ground upon which the court actually proceeded is shown with reasonable certainty by

the following extract from the record: "Mr. Brecken-ridge: 'The defendant now moves the court to instruct the jury to return a verdict in favor of the defendant for the reasons, first, because the second amended petition does not state facts sufficient to constitute a cause of action, and second, that under the undisputed evidence in this case plaintiff is not entitled to recover.' Mr. Mahoney: 'I understand from that that the defendant does not avail itself of the election to have a continuance of the cause at our costs.' Mr. Breckenridge: 'No, we will proceed.' The Court: 'Motion to instruct the jury sustained.' " Before the court had in fact instructed the jury to return a verdict in favor of the defendant, the following proceedings took place: "Mr. Mahoney: 'If your honor please, the plaintiff now in open court dismisses his cause of action without prejudice to the bringing of a new action.' Mr. Breckenridge: 'Do I understand that our supreme court has passed upon the right of a party to do that after he has tried the lawsuit and been defeated?' The Court: 'I think he can do that up to any ·time until the case is submitted to the jury.' Mr. Breckenridge: 'But this case has been submitted to the jury. The defendant objects to the dismissal of this case at this time after the submission of the case upon a motion to instruct a verdict for the defendant, after the plaintiff has rested his case, and after the court had announced his decision upon the motion to instruct the verdict in favor of the defendant.' The Court: 'The plaintiff having moved for leave to dismiss his case without prejudice before the instruction asked for by the defendant had been in fact given to the jury, the court therefore sustains the motion of the plaintiff and grants leave to plaintiff to dismiss this action without prejudice.' To which ruling of the court the defendant duly excepts."

The discretionary power of the district court to set aside a submission and receive further evidence, or to postpone the trial, or even to permit a dismissal of the case, is not doubted; but there is nothing in the present record to indicate that there was any just ground for the exercise of

such power, or that there was any attempt to bring it into action. The court was evidently of the opinion that, the peremptory instruction not having been yet read to the jury, the right of plaintiff to dismiss was absolute. This was an erroneous conception and it led to a wrong result.

The decision is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.